914 So.2d 1124 (2005)
Deborah SEAMSTER, Plaintiff-Appellant
v.
William M. NELSON, Jr., Defendant-Appellee.
No. 40,510-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*1125 Deborah Seamster, In Proper Person.
William M. Nelson, Jr., In Proper Person.
Before BROWN, GASKINS and MOORE, JJ.
MOORE, J.
The mother, Deborah Seamster, appeals a judgment that denied her rule for custody of the minor child, CN, and continued sole custody with the father, William Nelson Jr. For the reasons expressed, we affirm.

Factual Background
The parties appeared pro se both at trial and on appeal, leading to various deficiencies in the record which are noted where relevant.
CN was born to William and Deborah in December 1994. The parties obtained a divorce in Rockdale County, Georgia in October 1999. The final judgment and decree, citing a stable environment and the child's degree of adjustment, awarded custody of CN to William. At the trial of the custody rule, Deborah testified, however, that the parties reconciled and the family moved to Doyline, in Webster Parish, in March 2000.
In October 2000, both William and Deborah were arrested on criminal charges, the exact nature of which is not disclosed in the record. They sent CN to stay with William's sister in Haughton, in Bossier Parish. Deborah testified that in February or March 2001, CN came to live with her; however, on March 22, 2001, she filed a temporary custody order in Caddo Parish Juvenile Court. The court granted this ex parte but recalled it after a hearing on April 23, 2001. The judgment recited that Deborah was then incarcerated in the Webster Parish jail. The court awarded *1126 custody to William, with the proviso that CN was to stay at his paternal grandmother's house in Greenwood, in Caddo Parish.
Deborah admitted that around this time she was arrested on criminal trespass charges. In circumstances not disclosed at trial, Deborah's parents took CN to their home in Gary, Indiana, where he lived until April 2003. After that, he lived with William's parents in Greenwood for about a year, until May 2004.
Meanwhile, in February 2004, Deborah was released from jail. She married her current husband, Eric Seamster, and they moved into United Christian Home, a halfway house he manages in Minden, in Webster Parish. William testified that for the next few months, he drove CN from Shreveport to Minden twice a month to visit with Deborah. He referred to a custody order that required Deborah to meet him halfway, but this order was not introduced into evidence.
In May 2004, William got a job working on a farm in Shelbyville, Texas, with a two-bedroom house included as part of the deal. He took CN to live with him and enrolled him in school there; according to William, CN is now an A  B honor roll student. William testified that Deborah phoned CN frequently over the next few months. William admitted that he lives off his farm work and CN's SSI check.
William testified that in early 2005, two things happened. First, he discovered that Deborah had claimed CN as a dependent on her income tax return, despite the fact that she was $20,000 behind in child support. No judgment ordering her to pay child support was introduced in the record. Second, Social Security mailed CN's SSI check to Deborah in Minden instead of to William in Shelbyville. William admitted that because of these events, he quit letting CN talk to Deborah on the phone.

The Instant Proceedings
On March 15, 2005, Deborah filed a petition for protection from abuse under the Protection from Family Violence Act, La. R.S. 46:2131 et seq. She alleged that William had cut off all communication and disconnected his phone  points which William conceded. She also alleged, however, that William had threatened her and CN, and had run off to Shelby County to avoid criminal prosecution in Haughton. The district court (Judge Robinson) signed an order of protection and a TRO granting custody to Deborah. After a hearing on April 5, however, a hearing officer found a lack of evidence to support Deborah's claims. On the hearing officer's recommendation, Judge Robinson dismissed his prior orders.
The next day, April 7, Deborah filed the instant ex parte motion for custody. This time, she alleged that one day earlier, William had been arrested on outstanding warrants, would not be able to make bail, and would be in jail for "at least 30 days or more." She claimed that his penal status prevented him from meeting his parental duties, and as a result CN had already missed two days of school. The district court (Judge Burchett) signed an ex parte order granting Deborah custody of CN, and directing all law enforcement officers to help locate CN.
William responded with his own pro se motion to supersede the previous order of custody. He denied that he had "to spend 30 days or more in jail," accused Deborah of perjury, and prayed that CN's custody should be restored to him. He also alleged that Deborah was "in violation of the Uniform Child Custody Jurisdiction Act," and that the correct jurisdiction of the matter was Georgia. The district court (Judge Robinson) signed an ex parte order temporarily returning CN to William. *1127 However, Deborah testified that after she checked CN out of school in Shelbyville, she took him to the United Christian Home and enrolled him in school in Minden. In brief, William alleges that he got CN back 18 days later. Both parties testified that CN was in school on the date of the hearing.
The district court (Judge Self) held a hearing on the parties' rules for custody on May 10. Without legal counsel, Deborah and William both testified, largely in narrative fashion. Deborah dwelt mostly on her perception that William was trying to keep CN away from her, had harassed her with phone calls about the SSI check, and was constantly on the run from law enforcement. She also testified, however, that at the United Christian Home, they had "plenty of room."
Deborah attempted to introduce three documents into evidence. Two of these were police reports from October 2000 and April 2003, allegedly for domestic abuse and a missing person claim; the third was a copy of a protective order filed after the instant rules were fixed. The court excluded these as hearsay.
William admitted that he had been arrested on April 6, but contrary to Deborah's claims, he spent only 26 hours in jail and CN missed only two days of school. He testified that Deborah has a history of filing domestic abuse charges that wind up dismissed. He also testified that at their house in Shelbyville, CN has satellite TV and a four-wheeler in the yard, and CN is on the A  B honor roll in school.
After the parties rested their cases, the court questioned them, painstakingly establishing most of the chronology related above.
The district court rendered oral reasons, initially questioning whether the court had emergency jurisdiction under the UCCJA. However, since the same court (Judge Robinson) had previously heard Deborah's rule and acted on it, "the court will assume jurisdiction in this matter." The court found that the 1999 divorce judgment was a considered decree, so the standard for changing custody was higher. The court ordered a continuation of sole custody with William, with visitation once a month at the grandmother's house in Greenwood and phone calls twice a week; no harassment or threats by either party; and Deborah's return of the SSI check to William. The court reduced these findings to a written judgment with the additional observation, "the credibility of Deborah Seamster is severely questioned."
Deborah took the instant appeal.

Discussion: Jurisdiction
Although the parties have not raised it on appeal, jurisdiction is the threshold issue. State in Int. of D.R.P., 38,200 (La.App. 2 Cir. 12/10/03), 862 So.2d 1073. In order for Louisiana to have jurisdiction over proceedings involving a minor child, one of the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act ("UCCJA"), La. R.S. 13:1700 et seq., must be met at the time the petition is filed. Id.
In preferential order, the bases for jurisdiction under UCCJA are (1) home state, (2) significant connection plus evidence regarding the best interest of the child, (3) emergency, and (4) default jurisdiction (no other state has jurisdiction or has declined it). R.S. 13:1702 A(1-4); State in Int. of D.R.P., supra. An exception to the preferential consideration given to the child's home state is continuing jurisdiction, which is retained by the state that rendered the original custody order, as long as it has not relinquished jurisdiction and the jurisdictional requirements of the UCCJA are met at the time modification is sought. State in Int. of D.P.R., *1128 supra; Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2 Cir.1993).
The preferred ground, home state jurisdiction, does not exist, as CN had lived with William in Shelbyville, Texas since May 2004, over six months before Deborah filed the instant rule for custody on April 7, 2005. Nonetheless, this sparse record supports the court's finding of continuing jurisdiction. The Caddo Parish Juvenile Court exercised jurisdiction in March 2001; the 26th Judicial District Court exercised jurisdiction four years later as a result of Deborah's petition for protection from abuse. R.S. 13:1702 A(3). The courts rejected Deborah's factual claims in those cases, but since then Louisiana has not relinquished jurisdiction, and there is no record evidence that any other state asserted it. Moreover, Deborah is domiciled in Webster Parish, and CN's paternal grandmother, with whom he has spent much custodial time, is domiciled in Caddo Parish, thus making Louisiana a more appropriate forum than Georgia. R.S. 13:1702 A(4). Finally, the district court obviously found that CN's best interest was served by resolving this contentious custody matter in the present proceedings, and on this point we concur. We therefore affirm the district court's assumption of jurisdiction.

Arguments in Brief
Deborah's pro se brief contains no specification or designation of alleged errors relied on, and this omission would justify a dismissal of her appeal. URCA Rule 2-12.4, ¶ 1; Martin v. Martin, 39,631 (La.App. 2 Cir. 5/18/05), 903 So.2d 619, writ denied, XXXX-XXXX (La.6/22/05), 904 So.2d 714. In view of her pro se status, however, this court will address Deborah's arguments to the extent that they can be discerned.
First, she contends, "The trial court erred in not admitting documents that would have clearly shown a pattern, resulting in Mr. Nelson being unable and unfit to care for the minor child." In support, she cites "Sec. 904 of the Louisiana Family Law Book." She asserts, without elaboration, that the "police reports" and "warrant papers" would show a change of circumstances.
Her citation to "Sec. 904 of the Louisiana Family Law Book" is apparently a reference to La. C.E. art. 904. This article provides that when certain public documents are deemed authentic, "a purported copy of the document shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification[.]"
Only one of Deborah's proffers, a copy of the Gary, Indiana Police Department offense report dated April 1, 2003, is actually included in the record. It is not certified; it is not even a complete copy. In short, it contains fewer indicia of authenticity than the bill of information and court minutes excluded by this court in State v. Honeycutt, 29,596 (La.App. 2 Cir. 8/20/97), 698 So.2d 718. This argument lacks merit.
Second, Deborah urges the "trial court erred in not addressing the fact that Mr. Nelson perjured himself, by stating he did not go to jail, but evidence of Mr. Nelson's incarceration was also not admitted and was dismissed as well as hearsay."
The determination of the district court in child custody matters is entitled to great weight; this discretion will not be disturbed on review in the absence of a clear showing of abuse. AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756. The trial court's great discretion is premised on its superior position to see and hear the witnesses and evaluate their sincerity and *1129 credibility. For this reason, the appellate court adopts the lower court's findings as its own in the absence of clear error, even if other conclusions from the same testimony might seem equally reasonable. Cain v. Cain, 39,903 (La.App. 2 Cir. 5/11/05), 903 So.2d 590, writ denied, XXXX-XXXX (La.6/15/05), 904 So.2d 679.
Contrary to Deborah's assertion in brief, William admitted he was arrested on April 6 and spent 26 hours in jail. This is, however, a far cry from the 30 days' incarceration alleged by Deborah in her ex parte motion. There is simply no record evidence to support the claim that William committed perjury. The instant record shows that Deborah obtained three ex parte orders, on March 22, 2001, and March 15 and April 7, 2005, all of which were rescinded as factually baseless. Under the circumstances, we cannot disturb the district court's observation that Deborah's credibility was "severely questioned."
The 1999 final judgment and decree weighed evidence of parental fitness. It is therefore a "considered decree." Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Wages v. Wages, 39,819 (La.App. 2 Cir. 3/24/05), 899 So.2d 662. A party seeking to modify a considered decree of permanent custody bears a heavy burden of proving that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Evans v. Lungrin, supra; Wages v. Wages, supra. Deborah's unsupported claims of perjury, threats and prolonged incarceration fall far short of meeting the heavy burden. The district court was not plainly wrong to reject her rule to change custody.

Conclusion
For the reasons expressed, the judgment is affirmed. To the extent permitted by La. C.C.P. art. 5188, all costs are to be paid by the appellant, Deborah Seamster.
AFFIRMED.