STEWART, J.
fin this child in need of care matter, the mother, Melissa Winters, appeals the judgments of adjudication and disposition relating to her child, J.W., on the grounds that the trial court lacked jurisdiction and erred in approving the case plan. Because the trial court did not abide by the Uniform Child Custody Jurisdiction Act (“UC-CJA”) to determine whether it had jurisdiction, and because the trial court erred in approving the case plan, we stay the child in need of care adjudication, reverse the judgment of disposition, and remand the matter for the trial court to abide by the UCCJA procedures for determining the more appropriate jurisdiction as explained in this opinion.
FACTS
This child in need of care proceeding began when an instanter removal order for the child, J.W., was signed by the trial court on February 22, 2007. J.W. was placed in the temporary custody of the Department of Social Services (“DSS”) for her protection on the grounds that she was believed to be a victim of neglect. The affidavit supporting the instanter order explained that J.W.’s aunt no longer wanted to provide care for her. The aunt did not have legal custody, and the parents’ whereabouts were then unknown.
On March 27, 2007, the state filed a petition to have J.W. adjudicated a child in need of care. The petition alleged that J.W.’s mother abandoned J.W. and an older sibling when she gave physical custody of them to their grandmother in Alabama by signing a notarized letter on October 7, 2006. The grandmother soon became ill and transferred custody of the children to their aunt, Tonya Thomas, who drove to Mississippi in October to get the 12children and bring them to Louisiana. Nothing in the record explains why J.W. and her sibling were in Mississippi when the aunt went to get them. According to the petition, DSS’s Office of Community Services (“OCS”) investigated the matter in the latter part of October 2006, and even conducted a phone interview with the mother on October 26, 2006. The mother related that due to personal problems she could not come to Louisiana to assign a caretaker for her children and that she gave Thomas provisional custody until J.W. turned 18. OCS validated the abandonment by the mother; however, the trial court refused to grant custody to DSS on the grounds that it lacked jurisdiction to do so because the abandonment had occurred in Alabama.
The petition further alleged that OCS received a report of neglect on February 2, 2007, indicating that Thomas no longer wanted to care for J.W. Interviews conducted by OCS with J.W.’s sister, J.W., Thomas, and Thomas’s daughter revealed that Thomas perceived J.W. to be causing problems in the home due to anger issues. OCS also spoke with J.W.’s aunt in Mississippi, who related that the mother had been hospitalized for an overdose and after her release had gone to Panola, Alabama. *844 Further investigation following J.W.’s removal from Thomas’s home revealed that the child’s mother was in jail in Livingston County, Alabama, for criminal trespassing.
At the appearance to answer proceeding on April 9, 2007, the mother’s appointed attorney objected to the trial court’s jurisdiction on the grounds that the alleged abandonment occurred in Alabama. No response to the objection is noted in the record. However, at the direction of the trial court, DSS contacted the Sumter County Department of Human Resources Children’s | ¡¡Services in Alabama regarding its willingness to get involved in the case due to the abandonment having occurred in Alabama and J.W.’s mother being incarcerated there. An attorney representing the Alabama agency replied by letter on May 10, 2007. He wrote that a file had been opened when a family friend petitioned for .custody of J.W. due to the mother’s “serious drug problem.” But the court had granted the mother’s petition to have custody of J.W. restored to her, and the agency closed the file on June 14, 2005. The attorney further wrote that he did not believe the juvenile court in Sumter County had jurisdiction. His reasons were that custody of J.W. had been restored to the mother and that the mother had relocated to Louisiana. We find nothing in the record to support his assertion that the mother had moved to Louisiana.
The adjudication took place on July 2, 2007. The mother’s attorney again objected to the court’s jurisdiction. The trial court overruled the objection, explaining that it had exercised emergency jurisdiction on April 23, 2007, because J.W. was located in Louisiana with no one to take care of her. Referring to the letter from the attorney for the Sumter County Department of Human Resources Children’s Services, the trial court concluded that Alabama would not exercise jurisdiction and that it now had jurisdiction based on J.W. being in Bossier Parish, Louisiana.
The state offered the testimony of Federico M. Arends, III, the OCS investigator, who related the events that led to J.W. being taken into custody. Although OCS had learned where the mother was incarcerated, no one with the agency had spoken to her. After denying a motion for involuntary ^dismissal made by the mother’s attorney, the trial court adjudicated J.W. a child in need of care based on neglect by her mother and father. The trial court noted that the mother’s attorney had contacted her about the proceedings and that she had taken no steps to arrange for J.W.’s care.
On June 6, 2007, DSS provided a letter to the trial court detailing its case plan for J.W. A copy of the plan was also sent to the mother. The plan required the mother to “submit to a psychological evaluation, keep the agency informed of her current situation, participate in nurturing parent and anger management classes, submit to substance abuse assessment, maintain stable housing, and to maintain contact with her child.” The plan provided that the mother was to visit J.W. on the first and third Monday each month at the McDonald’s on Mansfield Road in Shreveport. The case plan goal for J.W. was reunification with placement in foster care while in the custody of DSS. The mother’s attorney filed objections to the case plan. He argued that requirements for a psychological evaluation and parenting classes were not related to the reasons for J.W. being adjudicated in need of care. Moreover, the mother’s incarceration would make it impossible for her to complete the case plan requirements. He also argued that the state should pay the costs of any classes, evaluations, and transportation for visits.
At the disposition hearing on August 6, 2007, the state called Melinda Miller, a *845 child welfare specialist with OCS, to testify about the case plan. Miller’s testimony established that the case plan requirements were typical of such plans. Though the state would likely not pay for services for the mother if she was not in Louisiana, OCS might be able to help her locate the required [^services in Alabama. Miller’s testimony also made clear that OCS had made no effort to communicate with the mother other than sending her a letter with the case plan, and had not communicated with any agency or the prison to determine what services might be available for the mother.
Although the mother’s attorney argued that the case plan was a “recipe for failure,” the trial court adopted the plan with the modification that it be extended to 18 months to allow time for the mother to complete the plan after her release. The trial court noted that it would be “extremely interested” in what steps the mother would take to work the plan with the resources available to her in prison. We observe that there was no evidence of what, if any, resources would be available to the mother while incarcerated or upon her release in Alabama.
The mother now appeals both the child in need of care adjudication and the disposition on grounds relating to the court’s jurisdiction and the appropriateness of the case plan.
DISCUSSION
The mother first argues that the trial court lacked anything other than emergency jurisdiction under the UCCJA and that the appropriate Alabama court, which appears to have continuing jurisdiction pursuant to a prior custody proceeding, should have been contacted to determine whether it desired to assert or decline jurisdiction over the matter.
The UCCJA provides jurisdictional limitations that require a court that otherwise has subject matter jurisdiction to decline to exercise it. Stelluto v. Stelluto, 2005-0074 (La.6/29/05), 914 So.2d 34; Amin v. Bakhaty, 2001-19676 (La.10/16/01), 798 So.2d 75. The UCCJA’s jurisdictional requirements must be met at the time the petition is filed in order for the court to have jurisdiction over the child. Seamster v. Nelson, 40,510 (La.App.2d Cir.10/26/05), 914 So.2d 1124; State ex rel. D.R.P., 38,200 (La.App.2d Cir.12/10/03), 862 So.2d 1073.
The UCCJA provides four grounds, in preferential order, that warrant an exercise of jurisdiction over a child in an interstate matter relating to the child’s custody: (1) Louisiana is the home state of the child; (2) there is a significant connection with this state or substantial evidence here about the child’s care, protection, training, or personal relationships; (3) there is a necessity to exercise emergency jurisdiction or the child is present here and has been abandoned; or (4) either no other state has jurisdiction or has declined to exercise jurisdiction on the basis that this state is the more appropriate forum and it would be in the child’s best interests for the court to assume jurisdiction. La. R.S. 13:1702(A)(1—4); State ex rel. D.R.P., supra. The child’s physical presence in this state, alone, is not sufficient to confer jurisdiction, nor is it a prerequisite for asserting jurisdiction. La. R.S. 13:1702(B) and (C).
Unless declined, courts exercising juvenile court jurisdiction have exclusive original jurisdiction over cases subject to the UCCJA when there is a claim of emergency jurisdiction, when a petition alleges a child is in need of care, and when a petition alleges facts that would bring the matter within the exclusive original juris *846 diction of juvenile courts pursuant to the Children’s Code. La. Ch. C. art. 310.
|7In this matter, the trial court explained at the adjudication that it first exercised emergency jurisdiction but then determined that it had jurisdiction over the child in need of care proceeding based on the child’s presence in Louisiana and a letter from an attorney for the Sumter County Department of Human Resources Children’s Services expressing his belief that the juvenile court in Sumter County did not have jurisdiction. We find error in the trial court’s assumption of jurisdiction and failure to follow the procedures set forth in the UCCJA.
Clearly, the instanter order alleging J.W. to be a victim of neglect and indicating that she had no one to provide care for her empowered the trial court to exercise emergency jurisdiction. When the child is present in this state and extraordinary circumstances require immediate protection of the child, then emergency jurisdiction exists. The immediacy may result from abandonment, mistreatment, abuse, or neglect. State ex rel. D.R.P., supra. Even when emergency jurisdiction may be exercised, the inquiry does not end. A final determination regarding the child’s custody should not be made until the UCCJA procedures are explored, such as by determining whether another basis for asserting jurisdiction exists and whether jurisdiction should be declined in favor of another more appropriate forum. Renno v. Evans, 580 So.2d 945 (La.App. 2d Cir.1991).
In examining the grounds for jurisdiction under La. R.S. 13:1702(A) of the UCCJA in light of the facts shown by the record, it is clear that the trial court could not exercise jurisdiction pursuant to the home state grounds. Home state refers to the state where, immediately preceding the time |sinvolved, the child lived with a parent or person acting as a parent for at least six consecutive months. La. R.S. 13:1701(5). When this matter began in February 2007, J.W. had been in Louisiana for no more than four months. She was brought to Louisiana by her aunt sometime in the latter part of October 2006. Louisiana cannot be considered J.W.’s home state.
Under La. R.S. 13:1702(A)(2), the court may exercise jurisdiction when the child or parent has a significant connection to the state and there is substantial evidence here concerning the child. Whether a significant connection exists should be determined based on evidence at the time of filing. Stelluto, supra. The significant connection test seeks to determine which state has “superior” access to evidence relevant to the matter. Id. See also Revere v. Revere, 389 So.2d 1277 (La.1980). There is no showing in this record of any significant connection to this state by J.W. or her mother. At the time of filing, J.W. had only been in Louisiana for a short time, and nothing in the investigation by OCS indicated that J.W. had ever lived in Louisiana prior to being brought here by her aunt in October 2006. Although the letter from the Alabama agency’s attorney stated that the mother had relocated to Louisiana, nothing in the record supports this assertion or shows that the mother was ever in Louisiana. There is no significant connection to this state, nor is there an availability of substantial evidence here concerning the child that supports the trial court’s exercise of jurisdiction.
Jurisdiction may also be assumed when it appears no other state would have jurisdiction or another state declined jurisdiction on the grounds that Louisiana is the more appropriate forum, and it is in the child’s best interests | nfor the court here to take jurisdiction. La. R.S. 13:1702(A)(4). Factors to consider in de *847 termining whether another state should, in the child’s best interest, assume jurisdiction include: (1) whether another state is or recently was the child’s home state; (2) whether another state has a closer connection to the child and the child’s family; (3) whether another state has substantial evidence concerning the child’s care, protection, training, and personal relationships; (4) whether the parties have agreed on another appropriate forum; and (5) whether the exercise of jurisdiction by a Louisiana court would contravene the purpose of the UCCJA. La. R.S. 13:1706(C)(1-5); Renno, supra.
Analysis of these factors in light of the facts shown in the record points to Alabama as the state that would be the most appropriate forum to determine custody of J.W. in a child in need or care or similar proceeding in that state. The record indicates that J.W. lived in Alabama before being brought to this state by her aunt. She was abandoned in Alabama by her mother when her mother left her with the grandmother. The mother is now located in Alabama where she has been incarcerated. An Alabama court has previously handled a custody matter concerning the mother and a family friend who sought custody of J.W. due to the mother’s alleged drug use. Moreover, J.W. had been in Louisiana for only a matter of months when this proceeding was initiated, and there is no showing that her mother ever lived in Louisiana. Nothing in the record substantiates the claim that the mother had relocated to Louisiana. It appears that J.W. and her mother have | ^significant connections to Alabama and that Alabama would be more likely than Louisiana to have substantial evidence relating to J.W. and her family.
Our examination of the jurisdictional grounds under the UCCJA and the factors for determining whether it would be in the child’s best interest for another state to assume jurisdiction shows that the only basis for the trial court to exercise jurisdiction would be under the emergency provision or if Alabama declined to exercise jurisdiction. The record does not show that Alabama declined jurisdiction. It shows only that an attorney for a social services agency, not a court, believed that Alabama would not have jurisdiction. We find that the trial court erred in relying on this communication to determine that Alabama would not have or exercise jurisdiction.
Rather than assuming jurisdiction, the trial court should have followed the procedure set forth in La. R.S. 13:1706(D) by communicating with the appropriate Alabama court and exchanging information relevant to the exercise of jurisdiction by either court to determine the more appropriate one to assume jurisdiction and provide a forum suitable for acting in J.W.’s best interest. The record does not show any communication between the trial court and the appropriate Alabama court to determine whether Alabama would assume or decline jurisdiction. This procedure is also set forth and discussed in Renno, supra.
Consequently, we find that while the trial court had emergency jurisdiction to protect J.W. because of neglect and abandonment and place her in the temporary custody of the DSS, it was error to render an adjudication Inand disposition without first determining the appropriate jurisdiction under the UCCJA procedures. Our review of the record does support the finding that J.W. is a child in need of care. But because the appropriate jurisdiction has not been determined, the adjudication will be stayed pending resolution of the jurisdiction issue. We reverse the judgment of disposition on the basis of the jurisdictional issues and as explained next.
*848 We find merit in the mother’s assertion that the trial court erred in approving the case plan. The mother’s attorney correctly concludes that the plan is “a recipe for failure.” Except in extraordinary circumstances, the state must make reasonable efforts to assist parents in removing obstacles to reunification with their child. La. Ch. C. art. 672.1; State ex rel. A.T., 2006-0501 (La.7/6/06), 936 So.2d 79. “Reasonable efforts” are defined as “the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families.” La. Ch. C. art. 603(17). Among the case plan requirements, La. Ch. C. art. 675(B)(2) states that a case plan include services for the parent to “improve conditions in the parents’ home, facilitate the safe return of the child to his own home.... ” Also, the agency must document the efforts it makes to safely return the child to its home or an alternative safe and permanent placement. La. Ch. C. art. 675(B)(3).
Review of the case plan and the testimony of Melinda Miller, the OCS child welfare specialist, compels a finding that the case plan proposed by OCS and approved by the trial court, even with the 18-month extension, cannot be considered as demonstrating that reasonable efforts would be made |iato remove obstacles to reunification of J.W. with her mother. Even though OCS knew that the mother was located in a prison in Alabama, it made no effort to contact her about her situation, to contact the prison about the availability of any services relevant to the proposed case plan, or to contact an agency in Alabama equivalent to OCS to determine what services might be available to the mother either in prison or upon her release. Moreover, OCS made no effort to determine the reason for the mother’s abandonment of J.W. or to find out what obstacles exist to prevent reunification upon her release from prison. Finally, OCS made no effort to determine whether the mother would be able to pay for the classes, evaluations, and transportation mandated by the plan or what assistance the state could provide. It seems that all of these questions should have been addressed before devising the case plan and that the information would have enabled OCS to create a plan that had some relation to the difficulties faced by the family. Instead, OCS proposed a typical case plan without regard to the obvious problems that might be encountered by a parent who does not live in Louisiana and who is imprisoned in another state.
For these reasons, we find that the trial court abuse its discretion in approving this case plan and rendering a judgment of disposition.
CONCLUSION
Our review of this record reveals a sad matter rife with jurisdictional problems and lack of planning by the authorities. The best interests of J.W. have not been served by the trial court’s failure to follow the procedures for determining jurisdiction set forth in the UCCJA and the meaningless case Implan proposed by OCS and approved by the court. Though we stay the judgment of adjudication and reverse the disposition judgment, we order J.W. to be continued in custody of the Department of Social Services pending a determination of the appropriate jurisdiction to proceed with this matter. Within 15 days of the rendering date of this opinion, the trial court is ordered to contact the appropriate court in Alabama regarding jurisdiction as provided in La. R.S. 13:1706(D). If it is determined that Alabama is the more appropriate forum, then proceedings in Louisiana should be stayed while arrangements are made to transfer the matter and place *849 J.W. in the custody of the appropriate authority in Alabama. However, if Alabama declines jurisdiction, then the trial court may proceed with the disposition hearing once OCS devises a case plan after obtaining the pertinent information as discussed in this opinion.
JUDGEMENT OF ADJUDICATION STAYED; DISPOSITION REVERSED; AND MATTER REMANDED FOR FURTHER PROCEEDINGS.