STEWART, J.
|, David Diamand (hereafter referred to as “David”) is appealing a judgment granting Bruce and Kathy Davis (hereafter referred to as “the Davises”) joint custody of C.D. with David, and further designating the Davises domiciliary custodians with whom C.D. is to reside. For the reasons that follow, we affirm.
FACTS
David and Melissa Diamand (hereafter referred to as “Melissa”) were married in California on July 13, 2000. Their daughter, C.D., was born on January 11, 2001. She is currently 11 years old. David and Melissa separated when C.D. was about four months old, and Melissa and C.D. moved to Bossier City. They subsequently moved to Arizona where Melissa obtained a medical residency. David and Melissa obtained a divorce in 2005. On February 27, 2002, the County of Los An-geles — Department of Children and Family Services advised David that Melissa was involved in a car accident and arrested for driving under the influence and child endangerment in the state of Arizona. After Melissa was arrested, C.D. was placed in foster care. Apparently, Melissa began taking prescription medication for a partial knee replacement, and began abusing the prescription drugs. Melissa lost her medical residency.
C.D. was subsequently given to David. After a couple of months with C.D. in California, David went to federal prison for six years for securities fraud in 2002.
C.D. was placed in foster care for about four months before the Davises, Melissa’s parents, were able to have the court place C.D. with |2them. She has been in their custody since she was about 15 months old. C.D. has resided in Louisiana with the Davises. The Davises were granted guardianship of C.D. by the children’s court in California in 2004. The Davises have attempted to adopt C.D., but were unsuccessful.
In May 2007, Melissa filed for and obtained custody of C.D. David objected based on a jurisdictional issue, and the Louisiana trial court found that Louisiana had jurisdiction over C.D.’s custody, since she had lived in Louisiana and neither parent nor C.D. lived in California. C.D. continued to live with the Davises. In 2007, Melissa also resided in Louisiana with the Davises.
David was released from prison in 2008, and returned to California. On October 20, 2009, he filed paperwork in Bossier Parish, seeking full legal and physical custody of C.D. The Davises intervened, seeking sole custody of C.D. and child support. The Davises alleged that substantial harm would result if either parent was granted custody of C.D.
On November 9, 2009, the trial court granted the Davises and David joint custody of C.D., without prejudice, and the Davises were designated domiciliary custo *1030 dians with whom C.D. was to reside. David was granted specific periods of physical custody, including every Thanksgiving, Christmas, Spring Break holiday, and six weeks in the summer. Melissa was granted visitation with C.D. at the Davises’ home and under their supervision. The Davises’ request for child support was denied.
In August 2011, David filed a rule for change in custody. In December 8, 2011, the trial court issued a judgment awarding David joint | ¡¡custody with the Davises, who were named domiciliary custodians.
David is now appealing this judgment.
LAW AND DISCUSSION

Jurisdiction

David asserts three assignments of error in his appeal. In the first assignment, he asserts that the trial court improperly usurped jurisdiction of the matter from the state of California, following an award of “legal guardianship” to the Davises by the California court after they had signed the guardianship papers and submitted themselves to the jurisdiction of the California court.
On April 28, 2004, C.D. was placed under the legal guardianship of the Davises by the Superior Court of California, County of Los Angeles, in proceedings numbered CK48586. The Davises also attempted to adopt C.D. in California. After this attempt was unsuccessful, the Davises filed their Louisiana petition for custody on September 20, 2005. This petition for custody in Louisiana was dismissed.
David asserts that the Louisiana trial court did not have the authority to terminate the legal guardianship awarded in the California court. Further, he alleges that the Louisiana trial court ignored the statutes that require Louisiana to give “full faith and credit to judgments of courts in sister states unless the foreign forum lacked jurisdiction over the litigation or over the subject matter involved in the controversy.” David also contends that the Davises were in bad faith by attempting to play “keep away” with him regarding C.D.
I/The Louisiana Code of Civil Procedure allows jurisdiction over the minor’s status through this proceeding. It is “a proceeding to obtain the legal custody of a minor” where the minor is “domiciled in, or is in, this state.” La. C.C.P. art. 10(A)(5) (emphasis added). The Uniform Child Custody Jurisdiction Law (hereafter referred to as “UCCJL”), La. R.S. 13:1700 et seq., previously functioned to graft a second tier of inquiry onto the question of jurisdiction over the custody of minor children. Martin-Creech v. Armstrong, 42,649 (La.App. 2 Cir. 9/12/07), 965 So.2d 624, writ denied, 2007-2120 (La.11/21/07), 967 So.2d 1160. Jurisdiction over the custody of minor children is now governed by the Uniform Child Custody Jurisdiction and Enforcement Act (hereafter referred to “UC-CJEA”). The UCCJEA was enacted and the UCCJL repealed, effective August 15, 2007. Pursuant to La. R.S. 13:1842, the applicable law is the law that was in effect at the time the motion or request for relief was made. In the instant case, Melissa filed a rule for custody in the 26th Judicial District Court in May 2007. Since this rule was filed a few months prior to the effect date of the UCCJEA, the applicable law to the instant case is the UCCJL.
The UCCJL’s jurisdictional requirement must be met at the time the petition is filed in order for the court to have jurisdiction over the child. State ex rel J.W., 43,163 (La.App. 2 Cir. 2/13/08), 975 So.2d 841. It imposes jurisdictional limits that require a court with general subject matter jurisdiction to decline to exercise it. Stelluto v. Stelluto, 2005-0074 (La.6/29/05), 914 So.2d 34. These limita *1031 tions further the UCCJL’s stated purposes of avoiding jurisdictional competition, assuring that custody |filitigation takes place in the most convenient forum, promoting a stable home environment, deterring abductions, and encouraging cooperation among the courts of different states. Martm-Creech, supra. The UCCJL’s jurisdictional requirements must be met at the time the petition is filed in order for the court to have jurisdiction over the child. State, supra.
The UCCJL provides four grounds, in preferential order, that warrant an exercise of jurisdiction over a child in an interstate matter relating to the child’s custody:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child’s home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that his state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
In determining whether a state has subject matter jurisdiction over a child, the critical determination is whether the state is the child’s “home |fistate.” In re S.L.G., 40,858 (La.App. 2 Cir. 1/25/06), 920 So.2d 363. Under the UCCJL, “home state” means, in pertinent part, the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. La. R.S. 13:1701(7)(a). A “person acting as parent” means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody. La. R.S. 13:1701(13).
C.D. has lived in Louisiana with the Davises since 2002. Therefore, when Melissa filed the initial proceeding in May 2007, C.D. obviously had been living with the Davises for more than the six months. In fact, C.D. had been living with the Davises for approximately five years. This fact made Louisiana C.D.’s home state as defined by the UCCJL, giving the Louisiana court jurisdiction over her.
The Louisiana trial court did not err in finding that it had subject matter jurisdiction over this matter, since Louisiana is C.D.’s home state due her residence here since the age of 15 months. Further, the Louisiana trial court properly found that California no longer had jurisdiction, since C.D., Melissa, David, and the Davises did not reside in California, California was not the home state, and the parties had little connection to California. This assignment is without merit.

*1032
Ex Parte Communication

In his second assignment of error, David contends that the trial court’s ex parte meeting with counsel for Melissa Diamond for the purposes 17of issuing supplemental orders without notifying Appellant after he had made a written appearance constitutes a denial of due process, an appearance of impropriety and reversible error. More specifically, David asserts that it was improper for the trial court to have ex parte communication in this matter after he answered Melissa’s petition for custody via handwritten letter, which he alleges was filed on July 9, 2007.
David contends that the Louisiana trial court met ex parte with the Davises and Melissa on January 10, 2008, in order to confect a “clarifying order,” so that the Louisiana trial court could retain its hold on the jurisdictional aspects of this case. David believes that the Louisiana trial court’s actions that provided the Davises and Melissa additional relief “trampled on his due process rights.”
Canon 8(A)(6) of the Code of Judicial Conduct states, in pertinent part:
(6) Except as permitted by law, a judge shall not permit private or ex parte interviews, arguments or communications designed to influence his or her judicial action in any case, either civil or criminal.
* * * *
Where circumstances require, ex parte communications are authorized for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex party communication.
After a hearing, on September 27, 2007, a judgment was rendered and signed in favor of Melissa. This judgment “awarded unto her the sole legal care, custody, and control of the minor child, [C.D.], subject to the reasonable supervision visitation rights of David.” This order was without | ^prejudice to David. The “clarifying order.” which was signed on January 10, 2008, that David is referring to is not “additional relief’ as he alleged. The clarifying order stated:
IT IS ORDERED, ADJUDGED, AND DECREED that the minor child, [C.D.], is not to be removed from the custody of the mother, MELISSA C. DIAMAND, unless such removal is ordered by a court of the State of Louisiana.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all provisions of the Judgment rendered on September 27, 2007, hereby remain in full force and effect.
After a careful comparison of the judgment and the clarifying order, we find that Melissa was not awarded additional relief. Further this clarifying order does not provide any indication that it influenced his or her judicial action. Rather, the trial court clarified the details of custody, which Melissa had previously been awarded in the September 27, 2007, judgment. This assignment of error is meritless.

Custody

In the third assignment of error, David argues that the trial court abused its discretion in awarding domiciliary custody to the Davises, after finding that he was fit. Further, David argues that the trial court misapplied the “substantial risk of harm” test, as well as the holding in Boyett v. Boyett, 448 So.2d 819 (La.1984).
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of *1033 fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as | nreasonable as those of the lower court. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in that which is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In a conflict between a parent and a nonparent, the parent enjoys the paramount right to custody of a child and may be deprived of such right only for compelling reasons. Bracy v. Bracy, 32,841 (La.App. 2 Cir. 10/27/99), 743 So.2d 930, writ denied, 99-3325 (La.12/17/99), 752 So.2d 169; Tennessee v. Campbell, 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274. La. C.C. art. 133, which governs custody awards to nonparents, states:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
At an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent. Bra-cy, supra. However, after an initial considered decree, the parent’s paramount right to custody must be weighed in' conjunction with the principles of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), i.e., the concern for terminating | inrepeated litigation and continuing a child in an established living environment. Id. A considered decree is an award of permanent custody in which a trial court has received evidence of parental fitness. Crowson v. Crowson, 32,314 (La.App. 2 Cir. 9/22/99), 742 So.2d 107; Bracy, supra. Therefore, a parent seeking custody of a child awarded to a nonparent by a previous considered decree bears the burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords a child. Bergeron, supra; Tennessee v. Campbell, 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274.
Evidence of incidents prior to entry of a stipulated judgment may not be relevant to prove a change of circumstances but may nevertheless remain relevant on the issue of best interest of the child. Crowson, supra. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had a full and fair opportunity to litigate. Id.
On November 9, 2009, the trial court granted the Davises and David joint custody of C.D., without prejudice, and the Davises were designated domiciliary custodians with whom C.D. was to reside. This judgment is deemed the “considered decree.” Since David sought to modify this decree, he bore the burden of proving that the continuation of present custody is so deleterious to C.D. as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a |nchange of environment is substantially outweighed by the advantages a change affords her.
*1034 David asserts that the trial court misapplied the substantial risk of harm test, further stating that there is nothing in the record that suggests that he is unable, unfit, or that he somehow forfeited his parental rights. He contends that a “stressful move” to California does not constitute a substantial risk of harm. Further, he suggests that since the Louisiana trial court determined that he was entitled to joint custody, then the Davises failed to meet the heavy burden of proving that custody in his favor would result in substantial harm to C.D.
Mark Vigen and Susan Vigen (hereafter referred to as the “Vigens”), licensed psychologists who evaluated all parties involved, believed that it would be in C.D.’s best interests to move to California to live with David. However, they noted that “a decision for [C.D.] to move to California will be stressful to her.” The Vigens also noted that “the easiest and most comfortable solution for C.D. and her grandparents would be to leave custody as it is and allow C.D. to remain in school at Apollo in Bossier City.”
The Davises have provided a good, stable home environment for C.D. for the past 10 years, which is most of the 11-year-old child’s life. A move from the Davises’ home in Bossier City, to her father’s one bedroom apartment in California would entail a change in schools, friends, possibly religion, and overall environment.
112The trial court found that David did not meet his burden of proving by clear and convincing evidence that the harm likely to result in a change of environment would be substantially outweighed by the advantages to C.D., pursuant to the principles established in Bergeron, supra. We agree, finding the trial court’s determination awarding custody to the Davises is amply supported by the record and not manifestly erroneous. This assignment bears no merit.
CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed at David Dia-mand’s cost.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY and SEXTON (Pro Tempore), JJ.
Rehearing denied.