GARRETT, J.
|,In this child custody matter, the father appeals from a district court judgment sustaining an exception of no jurisdiction in Ouachita Parish, which was filed by the mother, who has lived in Mississippi with the children since 2008. We affirm the district court judgment.
FACTS
James Leonard Wootton, III, and Melis-samarie Joy Newell married in East Baton Rouge Parish in 2001. Of this marriage, four children were born. The family was living in Caddo Parish when the parents separated in early November 2008, at which time the mother and the children moved to Mississippi. In fact, in the petition for divorce and determination of incidental matters filed by the father in Caddo Parish on November 24, 2008, he alleged that the mother was a Mississippi resident.
Pursuant to a consent judgment and joint custody implementation plan signed on November 20, 2009, the parties were awarded joint custody of the four children. The mother was designated as the domiciliary parent. The documents provided that the legal domicile of the children was the residence of the mother. The consent judgment provided that Louisiana “shall retain custody jurisdiction over all future custody litigation involving these parties and their children and child support issues.” The implementation plan had a similar provision. The parents divorced in May 2010.
In February 2012, the father filed a motion in Caddo Parish entitled “Motion for Transfer and Change of Venue,” requesting that the court transfer the case from Caddo to Ouachita Parish, where he now resides. The father relied upon the doctrine of forum non conveniens under La. C.C.P. art. 123. The father had the mother served under the Louisiana long-arm | ¡.statute as she was still residing in Mississippi. By a letter filed into the suit record on June 12, 2012, the mother — who was unrepresented — proposed that, instead of Ouachita Parish, the case be moved to the children’s home state of Mississippi. By judgment signed October 1, 2012, the father’s motion to transfer venue was granted. The Clerk of Court for Cad-do Parish was ordered to effectuate the transfer. Copies of documents contained in the Caddo Parish proceedings were filed with the Ouachita Parish Clerk of Court.
In January 2013, the father sought to modify the custody plan to designate him as the domiciliary parent. These pleadings were filed in Ouachita Parish. He alleged that he was now ■ a resident of Ouachita Parish and employed as a physician. He asserted that he had remarried and his current wife, who did not work, could provide care for the children. He also alleged that the living conditions provided by the mother for the children in Mississippi were unsuitable and that she was failing to communicate with him about the children’s well-being or report cards. He also contended that at least two of the children wanted to live with him. In addition to seeking a modification of the prior custody plan, he requested that the mother be held in contempt of court, sentenced to jail time and placed on probation.
The mother, now represented by counsel, answered and filed exceptions of prematurity, no jurisdiction, no cause of action and forum non conveniens. She denied all of the allegations made by the father and maintained in the exceptions that Mississippi, as the home state of the children, had jurisdiction and was the proper forum pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“UC-CJEA”), La. R.S. |s13:1801 et seq. She also asserted that under La. R.S. 13:1819, Louisiana is an inconvenient forum. She further alleged that the father’s rule to *1255 modify custody was filed only after she initiated “SES support proceedings” in Mississippi.[1]
A Hearing Officer Conference (HOC) was held on June 3, 2018. In her report, the hearing officer made the following recommendations:
(1) The exception of prematurity should be sustained due to the father’s failure to make the Caddo judgment executory in Ouachita;
(2) As to the exception of no cause of action, the father stated a cause of action; however, this is irrelevant if jurisdiction and venue are not proper in Oua-chita;
(3) The exception of no jurisdiction has merit. By the time the father filed his petition for divorce in November 2008, the mother and the children had already moved to Mississippi and the father made no objection to the move at that time. The children have lived in Mississippi for more than four years and it is now their home state under the UC-CJEA.
As to exclusive continuing jurisdiction under La. R.S. 13:1814, Ouachita Parish did not make the initial custody determination. Also, the children have only visited and never lived in Ouachita Parish. The signing of the transfer order indicated that Caddo Parish agreed that it was no longer the proper parish since none of the parties live there.
(4) The exception of forum non conve-niens has merit. The mother has always been the primary caretaker. She and the children have resided in Mississippi since before the first pleadings were ever filed, apparently with the father’s knowledge and consent. All pertinent evidence pertaining to the children and their current situation is in Mississippi. The only evidence in Oua-chita Parish pertains to visitation periods since the father moved there in July 2011. There is no compelling reason to make the mother and children come to Louisiana for a custody proceeding.
The father filed an objection to the HOC report. He argued that the mother moved to Mississippi without court consent. He also asserted that a |4prior request to transfer to Mississippi was denied in 2012 in Caddo Parish. He further cited the parties’ agreement in the 2009 consent decree that Louisiana would retain jurisdiction over all future custody matters and child support issues.
By judgment signed June 10, 2013, the district court in Ouachita Parish adopted the HOC report as its temporary order. The matter was set for hearing on July 30, 2013. At that time, the district court denied the exception of no cause of action but sustained the exceptions of prematurity and no jurisdiction. The exception of venue was deemed moot. In its oral reasons for judgment, the district court found that under the UCCJEA, Ouachita Parish could not assert jurisdiction over custody of these children who had never resided there. Also, since it did not make the initial custody determination, the court held that Ouachita Parish did not have continuing jurisdiction.
On August 13, 2013, the district court signed a judgment ruling on the exceptions and dismissing the matter at the father’s cost. In open court, it also clarified its reasons for judgment. In particular, it addressed La. C.C.P. art. 74.2 pertaining to venue in a proceeding for a change of custody. The article provides that, if the person awarded custody is no longer domiciled in the state, Venue may be appropriate where the custody decree was ren *1256 dered or where the person seeking custody is domiciled. However, the court took note of the 1983 comment (c) to the article, which states that in such a case, jurisdiction would be based on the Uniform Child Custody Jurisdiction Act (“UCCJA”), the predecessor to the UCCJEA. The court observed that, under the provisions of the current UCCJEA, only Caddo Parish could have | ¡¡exercised continuing jurisdiction and it declined. The court then cited the hearing officer’s conclusion that Oua-chita Parish did not have jurisdiction because Mississippi was the home state of the children under the UCCJEA.
The father appeals.
LAW
The UCCJA, La. R.S. 13:1700, et seq., which was adopted in Louisiana in 1978, served two paramount purposes: (1) avoiding jurisdictional competition among the states and (2) promoting resolution of custody disputes by the forum deemed most likely to- have the maximum amount of relevant information about the case. Lopez v. Lopez, 27,330 (La.App.2d Cir.9/27/95), 661 So.2d 665.
Broadly speaking, the Louisiana Code of Civil Procedure allows jurisdiction in Louisiana over a minor’s status in a “proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state.” La. C.C.P. art. 10(A)(5); Martin-Creech v. Armstrong, 42,649 (La.App.2d Cir.9/12/07), 965 So.2d 624, writ denied, 2007-2120 (La.11/21/07), 967 So.2d 1160. The UC-CJA previously functioned to graft a second tier of inquiry onto the question of jurisdiction over the custody of minor children. Diamand v. Davis, 47,332 (La. App.2d Cir.6/27/12), 94 So.3d 1027, writ denied, 2012-1922 (La.9/12/12), 97 So.3d 1005. It imposed jurisdictional limits that required a court with general subject matter jurisdiction to decline to exercise it. Diamand v. Davis, supra; State ex rel. J.W., 43,163 (La.App.2d Cir.2/13/08), 975 So.2d 841. Jurisdiction over the custody of minor children is now governed by the UCCJEA, which was enacted — and the UCCJA repealed-effective August 15, 2007. Diamand v. Davis, supra.
| fíLa. R.S. 13:1813, which addresses an initial custody determination under the UCCJEA, provides:
A. Except as otherwise provided in R.S. 13:1816, a court of this state has jurisdiction to make an initial child custody determination only if:
(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state,....
(2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 1820; and
(a) The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
(b) Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships.
(3) All courts having jurisdiction have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under R.S. 13:1819 or 1820; or
(4) No court of any other state would have jurisdiction under the criteria specified in Paragraph (1), (2), or (3) of this Subsection.
*1257 B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.
Under the UCCJEA, “home state” means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. La. R.S. 13:1802(7)(a).
|7La. R.S. 13:1814, which concerns exclusive, continuing jurisdiction, provides:
A. Except as otherwise provided in R.S. 13:1816, a court of this state which has made a child custody determination consistent with R.S. 13:1813 or 1815 has exclusive, continuing jurisdiction over the determination until:
(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or
(2) A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.
B. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this Section may modify that determination only if it has jurisdiction to make an initial determination under R.S. 13:1813.
The jurisprudence has held that the UCCJA’s jurisdictional requirements had to be met at the time the petition was filed in order for the court to have jurisdiction over the child. Diamand v. Davis, supra; State ex rel. J.W., supra. This includes a petition for custody modification. Diamand v. Davis, supra; Tabuchi v. Lingo, 588 So.2d 795 (La.App. 2d Cir. 1991). We find that the same is equally true with the UCCJEA.
La. R.S. 13:1819 addresses the concept of inconvenient forum under the UCCJEA and provides:
A. A court of this state which has jurisdiction under this Act to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court’s own motion, or request of another court.
B. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another Instate to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.
(2) The length of time the child has resided outside this state.
(3) The distance between the court in this state and the court in the state that would assume jurisdiction.
(4) The relative financial circumstances of the parties.
(5) Any agreement of the parties as to which state should assume jurisdiction.
(6) The nature and location of the evidence required to resolve the pending *1258 litigation, including testimony of the child.
(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.
(8) The familiarity of the court of each state with the facts and issues in the pending litigation.
C. If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.
D. A court of this state may decline to exercise its jurisdiction under this Act if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.
DISCUSSION
The father contests the district court’s ruling that it lacked jurisdiction to modify the prior custody judgment. He contends that Louisiana has never lost jurisdiction under the UCCJEA because he remains in the state. He also attempts to characterize the jurisdiction conflict here as [ ¡{intrastate, between the parishes of Caddo and Ouachita, and not interstate, between Louisiana and Mississippi.
On the other hand, the mother argues that the district court correctly determined that, under the provisions of the UCCJEA, Mississippi is the home state of the parties’ children, who have lived there since November 2008. According to the terms of La. R.S. 18:1818 and 13:1814, she maintains that Mississippi has replaced Louisiana as the children’s home state and that the vast majority of pertinent evidence is in Mississippi.
There is no doubt that Mississippi is the home state of the Wootton children, as defined in La. R.S. 13:1802(7)(a), and that it has been for several years.[2] Therefore, jurisdiction in a court of Louisiana in general — and Ouachita Parish in particular— for the father’s instant motion to modify custody would be permissible under the UCCJEA only if allowed by La. R.S. 13:1813 and 13:1814. Our review reveals that it is not.
Exclusive, continuing jurisdiction under La. R.S. 13:1814 is available only to a court of this state which has made a child custody determination consistent with La. R.S. 13:1813. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under La. R.S. 13:1814 may modify that determination only if it has jurisdiction to make an initial custody determination under La. R.S. 13:1813. Neither of these provisions vests exclusive, continuing jurisdiction in the court in Oua-chita because it neither made nor could have made the initial child custody determination. Further, in order for a court to exercise 11flcontinuing jurisdiction to modify its earlier custody decree, it must meet the jurisdictional requirements of the UC-CJEA at the time the modification is sought.
Arguably, the court in Caddo might have maintained jurisdiction in the instant matter. However, that contention is of no moment now. The Caddo court divested itself of jurisdiction over the matter when it transferred the matter to Ouachita on *1259 the father’s own motion after the parents and children all moved from Caddo Parish.
Moreover, even assuming arguendo that Louisiana had jurisdiction in either Caddo or Ouachita, the record indicates that Louisiana would be an inconvenient forum under La. R.S. 18:1819 due to the length of time the children have resided outside the state and the nature and location of the evidence required to resolve the pending litigation, i.e., testimony pertaining to the children’s education, health and social activities.
Both sides cite Hartman v. Lambert, 2008-1055 (La.App.3d Cir.2/4/09), 7 So.3d 758, as supporting their respective positions. In that case, a custody decree was originally rendered when both parents lived in Orleans Parish. Subsequent proceedings to modify custody were brought by the father in Orleans Parish where he maintained a residence while the mother lived in St. Landry Parish. Thereafter, the father moved to Nassau, Bahamas, and the mother registered the Orleans judgment in St. Landry. She then sought to modify child custody and support in St. Landry. The father objected to jurisdiction, and the St. Landry Parish court agreed because an Orleans judgment said Orleans retained continuing, exclusive jurisdiction of the proceedings. The third circuit vacated the lower court | n judgment, finding that St. Landry had jurisdiction, and remanded. Because the parties were seeking to litigate in Louisiana, albeit in different parishes, the third circuit concluded that the continuing and exclusive jurisdiction provisions of the UCCJEA did not apply. The court also found La. R.S. 9:355.17 was inapplicable because there was no relocation of a child as defined by La. R.S. 9:355.1.[3]
We find that the Hartman case offers no support for the father’s position because — unlike the instant case — no other state was involved. Contrary to the father’s assertions, the instant case is an interstate matter between Mississippi and Louisiana.
There are numerous cases in which Louisiana courts have lost jurisdiction in custody cases after the children went to live in other states which, over time, became the “home state” under the UCCJA’s definition and the place where the most relevant evidence concerning the child was available. Examples include Broadway v. Broadway, 623 So.2d 185 (La.App. 2d Cir. 1993), in which the child had lived in Mississippi for eight years; Counts v. Bracken, 494 So.2d 1275 (La.App. 2d Cir.1986), in which the child had been living in Arkansas for seven years; and Martin v. Martin, 545 So.2d 666 (La.App. 5th Cir. 1989), in which the child had not | ^lived in Louisiana for at least 16 months at the time the mother filed for permanent custody.
In particular, we note that the case of Tabuchi v. Lingo, swpra, is remarkably similar to the matter before us. Although it was decided under the UCCJA, the rationale in that case is the same. There the mother moved to Missouri in 1984 with her *1260 son and daughter after she was awarded sole custody by a Louisiana court. (The judgment was modified by agreement in 1986 to award joint custody with the mother as primary custodian.) In 1990, the father sought to obtain custody of the son after the child came to Louisiana for summer vacation. The trial court denied the mother’s exceptions of lack of jurisdiction and inconvenient forum and awarded primary custody of the boy to the father. This court reversed, finding that since the children had continuously lived with their mother in Missouri for six years, home state jurisdiction clearly vested in the Missouri court system long before the modification action was brought. Missouri was also the state with the most significant connection to the child and the maximum evidence concerning his present or future care, protection, training and personal relationships.
The father’s additional argument that Louisiana should have permanent jurisdiction over all future child custody disputes because the November 2009 consent judgment contained a provision to that effect is without merit. Subject matter jurisdiction, such as that exercised in resolving child custody disputes, cannot be conferred by consent of the parties. La. C.C.P. art. 3; Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2d Cir.1993).
11sWe find that the district court properly sustained the mother’s exception asserting a lack of jurisdiction under the UC-CJEA in the instant custody matter.
CONCLUSION
The district court judgment is affirmed. Costs of this appeal are assessed to the father, James Leonard Wootton, III.
AFFIRMED.

. Our research' suggests that this pertains to child support enforcement services available through the Mississippi Division of Child Support Enforcement.

. When the divorce proceedings were instituted on November 24, 2008, Louisiana would have been considered the home state at that time because the children had been in Mississippi for less than a month and Caddo Parish was the last matrimonial domicile.

. At the time the Hartman case was rendered, La. R.S. 9:355.17 stated:
If the court grants authorization to relocate, the court may retain continuing, exclusive jurisdiction of the case after relocation of the child as long as the non-relocating parent remains in the state.
However, this statute on continuing jurisdiction was repealed as written in 2012. See Acts 2012, No. 627. Furthermore, this provision was part of the child relocation statutes, La. R.S. 9:355.1, et seq. Given Dr. Wootton’s failure ever to object to the children’s domicile being in Mississippi beginning in 2008 and his apparent acquiescence thereafter, relocation is not an issue in this case. Further, more than five years have passed since the initial move. The Louisiana relocation provisions are simply inapplicable here.