STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-1322

DANIEL KADE CHAMBERLIN

VERSUS

KRISTI MICHELLE WITTEN CHAMBERLIN

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, DOCKET NO. 85,251, DIV. B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED.


David C. Hesser
Hesser & Flynn,
A Limited Liability Partnership
2820 Jackson Street
Alexandria, Louisiana 71301
(318) 542-4102
COUNSEL FOR DEFENDANT/APPELLANT:
    Kristi Michelle Witten Chamberlin


William D. Dyess
The Dyess Law Firm
870 West Main Street
Post Office Drawer 420
Many, Louisiana 71449
(318) 256-5667
COUNSEL FOR PLAINTIFF/APPELLEE:
    Daniel Kade Chamberlin

**GENOVESE, Judge.**

At issue in this appeal is whether Louisiana has jurisdiction to make an initial determination of child custody in light of the mother's allegation that Texas, not Louisiana, is the home state of the minor child. After the trial court entered judgment in May 2014 granting the father sole custody of the minor child, the mother filed the instant appeal wherein she contests the trial court's October 2012 ruling that Louisiana has subject matter jurisdiction to decide custody. The mother argues that the trial court erred in ruling that Louisiana is the home state of the minor child pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), La.R.S. 13:1801 through La.R.S. 13:1841, and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. §1738A. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Daniel Kade Chamberlin (Mr. Chamberlin) instituted this matter on April 23, 2012, in Natchitoches Parish, Louisiana, by filing a Petition for Divorce and Child Custody.[1] According to his petition, Mr. Chamberlin married Kristi Michelle Witten Chamberlin[2] (Ms. Witten) "on May 5, 2011, and established a matrimonial domicile in Natchitoches Parish. Of the marriage[,] one child was born, namely Jack Eric Chamberlin [(Jack)] age 8 months.[3]" The petition alleged that Mr. Chamberlin and Ms. Witten "separated on or about April 22, 2012, with [Ms. Witten] absconding to Texas with [Jack.]" Mr. Chamberlin sought joint

---

[1]Mr. Chamberlin's petition alleged that he was entitled to an immediate divorce pursuant to La.Civ.Code art. 103(2), or, in the alternative, a divorce pursuant to La.Civ.Code art. 103.1.

[2]Mr. Chamberlin's petition originally misspelled Ms. Witten's name as Kristin Michelle Whitten Chamberlin.

[3]Jack was born on September 1, 2011.

custody of Jack with himself being designated as the domiciliary parent and with Ms. Witten having reasonable visitation.

On May 25, 2012, Mr. Chamberlin filed a Motion to Appoint Special Process Server to effectuate service upon Ms. Witten. This order was signed May 31, 2012. On May 30, 2012, Mr. Chamberlin filed a First Amending and Supplemental Petition for Divorce. On June 25, 2012, a Motion and Order to Appoint Curator was filed. The court-appointed curator filed an Answer to Petition for Divorce and Child Custody on July 3, 2012. A hearing in this matter was set for July 31, 2012.

On July 31, 2012, Ms. Witten appeared with retained counsel[4] and filed two pleadings in open court: (1) an Objection to Subject Matter Jurisdiction and Request to the Court to Decline Jurisdiction; and, (2) an Exception of Vagueness and Request for Stay Pursuant to La.R.S. 13:1821(B)[5] & 28 U.S.C. §1738A.[6] Ms. Witten alleged that Louisiana is not Jack's home state according to the UCCJEA or the PKPA. She argues that Texas is Jack's home state; therefore, jurisdiction to decide custody is not proper in Louisiana. According to Ms. Witten's pleadings, she and Mr. Chamberlin "lived together in Houston[,] Texas[,] in early 2011 when [she] became pregnant. It was agreed that [she] would travel to Louisiana to marry [Mr. Chamberlin.]" She denied living in Louisiana. Instead, it is her contention that she lived in "Richmond, Texas[,] with [Jack] and has resided there with [him] since his birth on September 1[,] 2011."

---

[4]Ms. Witten's court-appointed curator was discharged.

[5]According to La.R.S. 13:1821(B), "If the information required by Subsection A of this Section is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished."

[6]28 U.S.C. §1738A refers to the PKPA.

2

Mr. Chamberlin also filed two pleadings in open court on July 31, 2012: (1) a Second Amending and Supplemental Petition and Motion for Ex Parte Order of Custody; and, (2) his Affidavit attesting to facts supportive of his assertion that Louisiana has jurisdiction to decide child custody pursuant to the UCCJEA in compliance with La.R.S. 13:1821.[7] Mr. Chamberlin alleged "a change in circumstances" since his initial filing, thereby necessitating an ex parte order

---

[7]Louisiana Revised Statutes 13:1821 addresses the information which must be submitted to the court and provides:

A. Subject to local law providing for the confidentiality of procedures, addresses, and other identifying information in a child custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit shall state whether the party:

(1) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child custody determination, if any.

(2) Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding.

(3) Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

B. If the information required by Subsection A of this Section is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

C. If the declaration as to any of the items described in Paragraphs (1) through (3) of Subsection A is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and other matters pertinent to the court's jurisdiction and the disposition of the case.

D. Each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding.

E. If a party alleges in an affidavit or a pleading under oath that the health, safety, or liberty of a party or child would be jeopardized by disclosure of identifying information, the information shall be sealed and may not be disclosed to the other party or the public unless the court orders the disclosure to be made after a hearing in which the court takes into consideration the health, safety, or liberty of the party or child and determines that the disclosure is in the interest of justice.

granting him sole custody. According to Mr. Chamberlin's motion, Ms. Witten was involved in an automobile accident "on June 4, 2012, in Richmond, Texas, which subsequently resulted in [her] being charged" criminally for drug possession, and "the Texas Department of Family and Protective Services initiated an investigation of [Ms. Witten] on the basis of alleged abuse or neglect of [Jack]."

The record reflects that the trial court received evidence relevant to whether Louisiana has jurisdiction to make an initial child custody determination over the course of three nonconsecutive days—August 22, 2012, September 24, 2012, and October 26, 2012. On August 22, 2012, Ms. Witten filed her Affidavit for UCCJEA Information, wherein she attested to facts supportive of her assertion that Louisiana lacks, or that Texas has, jurisdiction to decide child custody pursuant to the UCCJEA in compliance with La.R.S. 13:1821.

On September 24, 2012, the second day of trial, Mr. Chamberlin filed two pleadings in open court: (1) an Answer to Respondent's Amended Objection to Subject Matter Jurisdiction and Request to the Court to Decline Jurisdiction; and, (2) an Amended Affidavit for UCCJEA Information in compliance with La.R.S. 13:1821.

At the conclusion of the hearing in this matter on October 26, 2012, the trial court ruled that Louisiana is Jack's home state; therefore, jurisdiction to decide custody was proper in Louisiana. In reaching this conclusion, the trial court stated, in pertinent part:

> I have a great deal of problems with the credibility of the mother, Ms. [Witten]. . . . The problem is that I don't think that Ms. [Witten] has been honest with anybody including . . . her parents. . . . I don't think she's been honest with anybody. She testified on the stand that she had purposely lied or told untruths, however you want to call it. She testified on the stand that it was her intent to move here. It was her intent because she promised [Mr. Chamberlin] that she would move here[,] and they were gonna get married[,] and they were gonna move here. There are multiple . . . things on her . . . Facebook saying how

4

happy she is and how she wants to live with him, how his family had been so supportive of her. These are things that she said. So if she is telling her parents that they're not supportive[,] we had testimony that . . . [Mr. Chamberlin's] mother has come and helped . . . , there's too much other evidence to say that they're not supportive. She said that she intended to move here, she established a residence here. She established bank accounts, she got mail here. She had doctors, she had a house, she had people mail things here. She told her . . . friends and family that . . . this is where she wanted to be, this is where she was happy. Now she may have changed her mind and that's what happens sometime[,] but she established a residence here. She established a domicile here. And she didn't leave until April, that's six months. Under the code, under the [UCCJEA], that gives this State jurisdiction to make the determination concerning custody. . . . Now I know that you and your family think that you were visiting here. But it didn't look like that. You established and when you said you moved you had . . . so many clothes here . . . . Okay, that's because you lived here. . . . I think factually that the child, that this family lived and resided in Louisiana from the day that they moved here when she said she intended to come here and live with her husband and establish a home here, till she left. Now she may have had misgivings one way or the other, but she didn't move. She lived here. She went and visited her parents. She didn't have another home in Texas. She did not establish her own home. . . . [S]he established a residence here. She testified to it in court today. She testified that she intended to stay here. There's a letter in the exhibits dated in February where she's talking about having a wedding ceremony in Louisiana in July. And that's as late as February. So I just think that[,] factually speaking[,] the Court has to make a determination that I have to judge the credibility of each and every witness[,] which I have done[,] and I believe that this Court has jurisdiction to handle this matter. We have jurisdiction to do the . . . divorce very definitely cause it was first filed here. . . . [S]o the only question is about the child. Now, let me say to you that I spoke to the Judge in Texas because that's what we're supposed to do. When this came up, before you ever came here[,] before I even spoke to any of you[,] I called the Judge[,] and we talked about it. And he said you're right, you should hear the issue of jurisdiction. The first question he asked me is, where was the petition for divorce first filed? Here. Cause that's always one thing we look at. Now, that being said I determined that we will proceed, that jurisdiction is here.

Also on October 26, 2012, the trial court signed a Considered Decree Determining

Jurisdiction, which stated:

This matter came up for hearing on August 22, 2012, September 22, [sic] 2012, and October 26, 2012 for the purpose of determining Jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). . . . After reviewing the

5

pleadings, hearing the testimony of the parties and witnesses[,] and the law and evidence in favor thereof[:]

> IT IS ORDERED, ADJUDGED AND DECREED that the 10th Judicial District Court in Natchitoches Parish, Natchitoches[,] Louisiana[,] has jurisdiction over this matter pursuant to LSA R.S. 13:1813 et seq.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Louisiana is the home state of the minor child, Jack Eric Chamberlin.

The record further reflects that subsequent thereto, Mr. Chamberlin and Ms. Witten began to alternate physical custody of Jack by agreement; however, on March 7, 2013, Mr. Chamberlin filed a Motion and Order for Ex Parte Custody, alleging serious grounds warranted that he be granted emergency provisional custody of Jack. In his motion, Mr. Chamberlin alleged that: (1) Jack had been "in his care since January 31, 2013[;]" (2) Ms. Witten no longer lived with her parents; instead, she was "living in a hotel room with [Eric Freeze;]" (3) Eric Freeze allegedly had a "drug problem and criminal history[;] and, (4) Ms. Witten was "pregnant . . . and expecting delivery of her baby in the near future." On April 15, 2013, Mr. Chamberlin was granted a divorce pursuant to La.Civ.Code art. 103(2). On May 16, 2014, the trial court ruled in favor of Mr. Chamberlin, awarding him sole custody of Jack and granting Ms. Witten only supervised visitation on every other weekend. Ms. Witten appeals, seeking review of the trial court's October 2012 ruling relative to jurisdiction.[8]

---

[8]On June 30, 2014, Ms. Witten filed a Motion and Order to Appeal:

[T]he final Judgment signed in the above cause on May 16, 2014. . . . Further, [Ms. Witten] appeals all rulings made by the Trial court as to the denial of the declinatory exception of lack of subject matter jurisdiction at the hearing on September 24, 201[2], [and] the interim order of December 19, 2013[.]

## ASSIGNMENT OF ERROR

In her sole assignment of error, Ms. Witten asserts: "The [t]rial [c]ourt erred in finding that Louisiana [is] the home state of the minor child and in finding that Louisiana has jurisdiction pursuant to the UCCJEA and the PKPA."

## STANDARD OF REVIEW

As pronounced by this court in *Otwell v. Otwell*, 10-1176, p. 2 (La.App. 3 Cir. 2/9/11), 56 So.3d 1232, 1233-34, "Whether a district court has subject matter jurisdiction over a case is subject to a de novo review. *Hartman v. Lambert*, 08-1055 (La.App. 3 Cir. 2/04/09), 7 So.3d 758)." Therefore, we will conduct a de novo review of the record.

## LAW AND DISCUSSION

Under the UCCJEA, La.R.S. 13:1813 (emphasis added) pertains to an initial determination of child custody and states:

> A. Except as otherwise provided in R.S. 13:1816,[9] **a court of this state has jurisdiction to make an initial child custody determination only if:**
>
> (1) **This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state**, or had been the child's home state within twelve months before commencement of the proceeding and the child is absent from the state because he was required to leave or was evacuated due to an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority, and for an unforeseen reason resulting from the effects of such emergency or disaster was unable to return to this state for an extended period of time.
>
> (2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 1820; and

---

[9]Louisiana Revised Statutes 13:1816, which provides for temporary emergency jurisdiction, is not at issue in this appeal.

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under R.S. 13:1819 or 1820; or

(4) No court of any other state would have jurisdiction under the criteria specified in Paragraph (1), (2), or (3) of this Subsection.

B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

"Home state" is defined by the UCCJEA in La.R.S. 13:1802(7)(a) (emphasis added) as:

**[T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.** In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

"[H]ome [s]tate" is defined by the PKPA in 28 U.S.C. §1738A(b)(4) (emphasis added) as:

**[T]he State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.** Periods of temporary absence of any of such persons are counted as part of the six-month or other period[.]

The parties do not dispute that Mr. Chamberlin was employed in the oil industry and worked a twenty-one day on and off schedule offshore. The evidence reveals that when Mr. Chamberlin worked offshore, Ms. Witten and Jack often

8

returned to Texas. Neither party disputes this fact; however, the parties clearly disagree on the frequency, duration, and characterization of Ms. Witten's trips with Jack to Texas. At the crux of this dispute is whether Ms. Witten and Jack were living in Louisiana and merely visiting Texas, or whether Ms. Witten and Jack were living in Texas and merely visiting Louisiana.

Ms. Witten testified that she never lived in Louisiana; therefore, Jack never lived in Louisiana either. She offered her Texas voter registration, vehicle registration, and probation documentation in support thereof. According to Ms. Witten, she and Jack would merely visit Louisiana in order to see Mr. Chamberlin when he returned from working offshore. Then, once Mr. Chamberlin went back to work offshore, Ms. Witten claims that she and Jack would return to their home in Texas. According to Ms. Witten, she and Jack spent more time in Texas than in Louisiana between Jack's date of birth on September 1, 2011, and April 22, 2012, the date she and Mr. Chamberlin separated.

Mr. Chamberlin refutes Ms. Witten's claim that she and Jack lived in Texas. According to Mr. Chamberlin, Jack lived in Natchitoches, Louisiana, from September 29, 2011 until April 22, 2012, and thus, Louisiana was Jack's home state. This allegation is supported by statements made by Ms. Witten on a social media website while she was in Texas on September 28, 2011, wherein she stated that she, Mr. Chamberlin, and Jack were preparing for their move to Louisiana. Mr. Chamberlin testified that on September 29, 2011, he, Ms. Witten, and Jack moved to Natchitoches, Louisiana. According to Mr. Chamberlin, he and Ms. Witten actually lived together in Natchitoches prior to Jack's birth, but because Ms. Witten wished to give birth in Texas, Mr. Chamberlin obliged, and Jack was born in Texas. When Jack was born on September 1, 2011, he was born prematurely; therefore, Mr. Chamberlin and Ms. Witten actually remained in

9

Texas, living at Ms. Witten's parents' home, until September 29, 2011. Mr. Chamberlin admitted that they moved together to Louisiana and that Ms. Witten did frequently return to Texas; however, he claims she was merely reporting to her Texas probation officer on a monthly basis and/or visiting her parents while he was working offshore.

From our de novo review of the record, we find that the trial court did not err in rejecting, as unbelievable and unreliable, Ms. Witten's self-serving testimony. When Mr. Chamberlin petitioned for custody of Jack on April 23, 2012, Jack had "lived for at least six consecutive months" with his parents, Mr. Chamberlin and Ms. Witten, in Louisiana as set forth in La.R.S. 13:1802(7)(a) and 28 U.S.C. §1738A(b)(4). Jack did, in fact, live in Louisiana with his parents, Mr. Chamberlin and Ms. Witten, since September 29, 2011. The trial court correctly found that Louisiana is the home state of Jack and that Louisiana has jurisdiction to determine custody herein. We find no merit to Ms. Witten's assignment of error raised in this appeal.

Finally, the May 2014 ruling of the trial court relative to custody has neither been designated as an assignment of error on appeal, nor has this issue been briefed by the parties. The appellate briefs of both Ms. Witten and Mr. Chamberlin address the merits of the jurisdiction issue only. Ms. Witten addresses the trial court's custody ruling in favor of Mr. Chamberlin, awarding him sole custody of Jack, and granting her only supervised visitation on every other weekend, fleetingly and only in the conclusion of her appellate brief, stating: "Should this Court rule that Louisiana does not have subject matter jurisdiction, it is requested that the custody judgment and the judgment allocating cost of the custody evaluation be found null for the lack of subject matter jurisdiction." The trial

court's custody determination memorialized in the Judgment dated May 16, 2014, is not before this court and, thus, is not considered.

## DECREE

For the foregoing reasons, we affirm the trial court's ruling that Louisiana is the home state and has subject matter jurisdiction in this case. Costs of this appeal are assessed to Defendant/Appellant, Kristi Michelle Witten Chamberlin.

**AFFIRMED.**