STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-499

CAITLAND SIOBHAN HEBERT

VERSUS

KEARY RYAN HEBERT

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE

THIRTY-THIRD JUDICIAL DISTRICT COURT

PARISH OF ALLEN, NO. 2014-151

HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS

JUDGE

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Meredith Abrusley Guillory
P.O. Drawer 1114
Oakdale, LA  71463
(318) 335-9771
  Attorney for Appellant, Caitland Siobhan Hebert

Corcoran Law Firm, LLC
Lawrence Sean Corcoran
4216 Lake Street
Lake Charles, LA  70605
(337) 602-6214
  Attorney for Appellee, Keary Ryan Hebert

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Caitland Siobhan Hebert (Caitland) and Keary Ryan Hebert (Keary) are the divorced parents of a nine-year old child, Kyler Neal Hebert (Kyler), born January 7, 2010. The first court order concerning custody of Kyler was based on a joint stipulation of the parties. The order was signed on June 17, 2014, and at that time both parents and Kyler were domiciled in Louisiana. The stipulated custody agreement awarded joint legal custody and designated Caitland as the domiciliary parent. Caitland moved to Texas shortly thereafter, but only temporarily, and then moved back to Allen Parish, Louisiana in 2014. Kyler attended school in Louisiana until the end of the 2016 school year.

In June of 2016 Caitland notified Keary via certified mail that she intended to move to Kerrville, Texas and wanted to relocate Kyler with her. Keary opposed the move. The matter was heard on August 1, 2016 in Allen Parish. Following the hearing the trial court granted Caitland permission to relocate with Kyler. The trial court awarded visitation to Keary guided in part by Keary's work schedule which at the time was alternating fourteen days at work and fourteen days at home. The court attempted to afford Keary as much visitation as possible awarding him visitation every other weekend. In order to accommodate Keary's schedule Kyler misses three days of school each month during the school year. Though Kyler's absences are considered unexcused they have not yet been charged against him. He must make up exams he misses during these absences. Exams are given on Fridays. These missed exams are made up on Mondays thus interfering with two more days of schooling each month. He leaves school at 1:00 o'clock in the afternoon on every other Thursday and misses the entire day of school on every other Friday. According

to Keary, this puts Kyler at the half-way pick-up point around "four to six o'clock, seven o'clock" depending on road construction and traffic accidents. This means that Kyler is on the road for eight to ten hours of travel time every other weekend. The parents have agreed to meet at a half-way point thus minimizing their travel time. According to Keary it is usually his "mom and step father" who actually pick up Kyler.

In a subsequent hearing concerning modification of the visitation schedule the trial court denied Caitland's motion to transfer the matter to Texas. At that time the parties stipulated: 1) that Texas is now the child's home state, 2) Texas and Louisiana have concurrent jurisdiction, and 3) Louisiana is a convenient forum for the decision of all issues. The stipulation was made part of the trial court judgment dated November 8, 2017.

On February 12, 2018, Keary filed a rule for contempt against Caitland alleging willful refusal to abide by the court-ordered visitation for Christmas. In response Caitland filed a pleading entitled "Petition to Make Judgment Executory and to Modify Custody" wherein she sought a transfer of jurisdiction to Texas and a modification of *visitation*. Caitland's motion to transfer asserted that she and the child no longer have a significant connection to Louisiana. Her basis for a change in the visitation schedule was largely the adverse impact the current schedule is having on the child's education. The trial court denied both the motion to transfer and the motion for a change in visitation and found Caitland in contempt. Caitland was ordered to pay $2,000 in attorney's fees for contempt. She appeals the trial court rulings.

**ANALYSIS**

The parties' stipulation to jurisdiction is not controlling. Subject matter jurisdiction "cannot be conferred by consent of the parties." La.CodeCiv. P. art. 3.

*See also Wootton v. Wootton*, 49,001 (La.App. 2 Cir. 5/14/14), 138 So.3d 1253. Additionally, "[a] judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void." La.CodeCiv. P. art. 3. This court has consistently held, "Whether a court has subject matter jurisdiction is reviewed on appeal under the *de novo* standard of review. *Chamberlin v. Chamberlin*, 14-1322 (La.App. 3 Cir. 4/22/15), 176 So.3d 1118, *writ denied*, 15-0972 (La.6/19/15), 172 So.3d 1093; *Otwell v. Otwell*, 10-1176 (La.App. 3 Cir. 2/9/11), 56 So.3d 1232." *Banerjee v. Banerjee*, 17-245 p. 3, (La.App. 3 Cir. 12/13/17), 258 So.3d 699, 701.

Our de novo review of the record reveals that Louisiana no longer has exclusive jurisdiction over this child custody matter because Caitland and Kyler no longer reside in Louisiana and have both resided in Texas since at least August 1, 2016.

> Except as otherwise provided in R.S. 13:1816, a court of this state which has made a child custody determination consistent with R.S. 13:1813 or 1815 has exclusive, continuing jurisdiction over the determination *until*:
>
> *(1) A court of this state determines that neither the child, nor the child and one parent,* nor the child and a person acting as a parent *have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or*
>
> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.
>
> B. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this Section may *modify* that determination only if it has jurisdiction to make an initial determination under R.S. 13:1813.

La.R.S. 13:1814 (emphasis added).

The present litigation seeking a change in visitation was commenced on February 27, 2018, almost eighteen months after Kyler and his mother no longer

3

resided in Louisiana. The parties do not dispute the fact that Texas is Kyler's home state and that he and his mother have resided in Texas for at least eighteen months before the commencement of the present visitation matter. The trial court found it had only concurrent jurisdiction with Texas but reasoned that there are "still significant connections with this jurisdiction" to support the Louisiana court's exercise of its continued jurisdiction. The only connection left with this jurisdiction is that the child's father and his family reside in Louisiana. The law and jurisprudence require more than just the fact that one parent continues to reside in this state. Under La.R.S. 13:1814(B): "A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this Section may modify that determination *only if it has jurisdiction to make an initial determination under R.S. 13:1813*" (emphasis added). Under the provisions of Louisiana Revised Statutes 13:1813(A), the trial court here would no longer be entitled to make an initial determination because Louisiana has not been the child's home state for more than six months prior to the commencement of the present action. La.R.S. 13:1813 provides in pertinent part:

> A. Except as otherwise provided in R.S. 13:1816, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> 1. *This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state,* or had been the child's home state within twelve months before commencement of the proceeding and the child is absent from the state because he was required to leave or was evacuated due to an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority, and for an unforeseen reason resulting from the effects of such emergency or disaster was unable to return to this state for an extended period of time.
>
> . . . .

4

B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

C. *Physical presence of, or personal jurisdiction over, a party* or a child *is not* necessary or *sufficient* to make a child custody determination.

To determine the more appropriate forum in which this matter should be heard we are required to make a comparative determination of which court's jurisdiction serves the best interest of the child. We note that the trial judge's oral and written reasons for ruling focused more on the concerns of the parents rather than the best interests of Kyler. The court failed to seriously entertain the fact that Kyler makes two sixteen to twenty-hour roundtrips every month and must miss at least three days of school each month. In addition to the three days he is absent from school Kyler misses regular classes on two Mondays each month because he must take his make-up exams on Mondays. These absences are not considered excused absences. The policy in force at Kyler's school is that if a child misses more than ten (10) days in a school year he is in danger of failing. Kyler missed fourteen (14) days in the 2016-17 school year due to the current visitation schedule. Caitland received emails from the school's administrator, Shelly Flash, informing her that, "At the point that a student reaches ten absences, an administrative referral is made and a mandatory parent meeting is required to restate the school's policy, and reiterate educational goals for the student." She received a second message by email from the school administrator which read:

> If your student has more than five absences for the year, you will receive an email reminding you that ten absences is the cut off for an administrative referral. Fifteen absences can lead to the board of directors approved dismissal of your student. If your student is a senior, they must adhere to school policy for graduate—in order to graduate.

The trial court stated at the hearing that it did not believe a school would penalize a child for absences occurring under a court-ordered visitation schedule.

Caitland testified that the school is aware of the court order and yet she received two emails reminding her of the school's policy. Regardless of whether there is proof that these absences would result in Kyler's removal from this private school, it is clear that the school system, which follows the Texas public school requirements, considers this number of absences deleterious to a student's education regardless of the reason for the absences. According to the report card in evidence, and Caitland's testimony, Kyler has maintained his "A" student ranking. Nevertheless, Caitland explained that Kyler was making low "A" grades and a "B" which Kyler found upsetting. Given the extreme demands on Kyler's time for travelling it is only a matter of time before adverse effects develop under the current schedule. It is clear that all witnesses who may testify regarding the effect of the current visitation schedule on Kyler's education are in Texas. Texas is Kyler's home state and it is now the locale with which he and his mother have the most significant connections in their daily life. Kyler's relationships with his father and his paternal extended family are of great importance, but those relationships do not create a significant connection to Louisiana that forms a basis for continued jurisdiction of our courts in Kyler's life.

We note in passing that the trial court stated in its written reasons for judgment that it found "no material change in circumstances warranting a modification of custody and visitation have occurred" and a "change in custody and visitation would not be in the best interest of the child." Although the petition filed by Caitland is entitled "Petition to Make Judgment Executory and to Modify Custody" the petition *seeks only to modify the current visitation schedule* because of its alleged deleterious effect on Kyler's education. Thus, the standard enunciated in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), would not apply.

> A modification of visitation rights is not so substantial as a change in actual physical custody. *Mosely v. Mosely,* 499 So.2d 106 (La.App. 1st Cir.1986), *writ denied,* 505 So.2d 1138 (La.1987), citing *Bergeron, supra.* As such, a showing that the modification is in the best interest of a child is sufficient. *Bennett v. Bennett,* 95-152 (La.App. 3d Cir. 05/31/95), 657 So.2d 413; *Reynier v. Reynier,* 545 So.2d 663 (La.App. 5th Cir.1989); *Mosely, supra.*

*Acklin v. Acklin*, 29,193 (La.App. 2 Cir. 2/26/97), 690 So.2d 869, 871.

In our de novo review, we are guided by consideration of what is in the best interest of Kyler. A Texas court is in the better position to hear this matter as almost all witnesses are located there. According to Keary's testimony, Kyler has not seen a doctor in Louisiana in over two years and has not attended school in this state for as long. Kyler does not attend church in Louisiana because he must begin his bi-weekly journey home too early in the day on Sundays. Each Monday after these long trips Kyler must take his make-up exams missed on Fridays. Keary testified that Kyler's only connection to Louisiana now is that his father, paternal grandmother, half-siblings, and cousins live here. We do not minimize the importance of fostering these relationships, but even our statutory law recognizes that the mere presence of the father and his family in Louisiana is not a basis to continue to exercise our courts' jurisdiction long after Louisiana is no longer the child's home state. In *Martin v. Martin*, 545 So.2d 666 (La.App. 5 Cir. 1989), the appellate court was faced with a situation similar to the present; only in that case it was the mother who remained in Louisiana while the child and his father had relocated to Texas two years earlier. Although the court was applying the former uniform custody laws, the underlying purpose of the current uniform custody law and the rationale which formed the basis of that decision has not changed.

> Charlotte Wyatt Martin remains domiciled in Louisiana. Her son John moved from this state in August or September 1986. Since the summer of 1987 he has lived in Dallas, Texas, where he attends school and is involved in extra-curricular activities. At the time of the district court hearing, *the child had not lived in Louisiana for more than two*

7

*years. The fact that he was born in and spent his early childhood in Louisiana does not confer jurisdiction over the custody issue on our district court.* Fouchi v. Fouchi, *477 So.2d 752 (La.App. 5 Cir.1985). While Louisiana may once have been the relevant forum for custody litigation, it is not now the state with the most recent significant connection to the child.*

The father argues that substantial relevant information on his son's present and future care is obtainable from family friends and school officials in Texas. The mother maintains in brief that testimony on the father's harassment of her and medical evidence on the child's psychological condition and recommended treatment will derive from Louisiana witnesses. . .

The commissioners' notes to the model statute, from which Louisiana's Uniform Child Custody Jurisdiction Law now is derived, emphasize that the forum for custody litigation is *the state which has the maximum rather than the minimum contact* with the child. UCCJA Section 3, commissioners' notes, 9 U.L.A. 124 (1968). The statute focuses on available evidence of the child's present or future care. *Schroth,* supra, at 643. Here the maximum relevant evidence of that care, as well as of *the child's circumstances, health and personal relationships, is most readily obtainable in Texas where the child resides, not in Louisiana*. Our state has no legitimate concern as to custody. Texas is the state with superior access to significant information on the child's current status. *The best interest of the child, which we consider paramount, dictates that Louisiana has no jurisdiction to determine the custody of John C. Martin.*

In support of its judgment retaining Louisiana jurisdiction over the custody dispute, the district court reasoned that because the father had initially selected Louisiana as the forum for litigating the separation/custody suit, he was thereafter estopped from contesting the court's jurisdiction. The record reflects that in May 1987 the mother sought to transfer the custody proceeding from Jefferson to Lafayette Parish, contending that the latter was the "most appropriate and most convenient forum." The father opposed the venue transfer, arguing that Jefferson Parish had a "much closer connection to the case." Now when the mother attempts to litigate custody in Jefferson Parish, the father argues that Louisiana has no jurisdiction. It is evident that each party has or is attempting to insure that custody litigation occur in a location of his or her convenience. The nature of litigation is that each party seeks to gain the position of advantage**. But neither the convenience nor the interest of the feuding parents is the primary consideration in determining jurisdiction.**

The Supreme Court has held that no "continuing jurisdiction" exists over a resident mother's motion to change custody of children then residing with their custodial parent father in Texas absent "compelling reasons." *Odom v. Odom,* 345

So.2d 1154 (La.1977). In the case before us, neither the initial filing of suit nor the concept of estoppel present "compelling reasons" for Louisiana's exercise of continued jurisdiction. Nor is the concept of estoppel an acceptable basis of jurisdiction under R.S. 13:1702.

In reasons for its judgment, the district court cited the underlying purpose of R.S. 13:1700, without elaborating. At the outset of this opinion we identified what we perceive is the primary purpose of the Uniform Child Custody Jurisdiction Law: to insure that the custody of a child is adjudicated in the state which has the "closest connection" with and the most "significant evidence" of the child's current status and interests. A finding that Louisiana has jurisdiction over the instant custody dispute frustrates the purpose of the statute. We hold that Louisiana has no jurisdiction to determine the custody of the minor John C. Martin.

*Martin*, 545 So. 2d at 668-70.

In *Cramer v. Tuttle*, 08-940, p. 5 (La.App. 3 Cir. 2/4/09), 11 So.3d 503, 506, this court, applying the version of the uniform act in effect in 2006 before the current uniform law was enacted in 2007, relied on the supreme court's direction in *Amin v. Bakhaty,* 01–1967, (La.10/16/01), 798 So.2d 75 at 80-88, "the choice of the optimum jurisdiction to resolve custody battles under the [Uniform Child Custody Jurisdiction Law] UCCJL focuses on the strength of connections between the child and the competing states, more akin to a personal jurisdiction analysis." Although the present case is governed by the 2007 version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the focus is the same. Because this child resides in Texas and has been a resident of that state for at least eighteen months before the present action was filed, Louisiana courts would not ordinarily have personal jurisdiction over such a person. When viewed is light of this analysis as directed by the state supreme court it is clear that this child's connections to Texas are stronger than the remaining connection he has to Louisiana which has as its only basis the fact that his father and paternal relatives reside in Louisiana.

Louisiana courts have jurisdiction over a minor's status in a "proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state." La.Code Civ.P. art. 10(A)(5). However, a second

tier of inquiry into the jurisdiction over custody issues exists under the UCCJEA, La.R.S. 13:1801, *et seq.* Even if a Louisiana court has subject matter jurisdiction, that jurisdiction must be declined based on limitations imposed by the UCCJEA. *Albitar v. Albitar*, 16-167 (La.App. 5 Cir. 6/30/16), 197 So.3d 332. The UCCJEA's limitation on jurisdiction was designed to avoid jurisdictional competition among states, to "assur[e] that custody litigation takes place in the state with which the child and his family have the 'closest connection' and where relevant evidence is located, promot[e] a stable home environment, deter[ ] abductions, and encourag[e] cooperation among the courts of different states." *Id.* at 345, quoting *Stelluto v. Stelluto*, 05-74, p. 8 (La. 6/29/05), 914 So.2d 34, 39.

*Banerjee v. Banerjee*, 17-245, pp. 3-4 (La.App. 3 Cir. 12/13/17), 258 So.3d 699, 701-02.

The Louisiana Second Circuit Court of Appeal applying the current provisions of the UCCJEA explained the application of the current law and the applicability of cases decided under the former version known as the UCCJA:

> Further, in order for a court to exercise continuing jurisdiction to modify its earlier custody decree, it must meet the jurisdictional requirements of the UCCJEA at the time the modification is sought. . .

> Moreover, even assuming *arguendo* that Louisiana had jurisdiction in either Caddo or Ouachita, the record indicates that Louisiana would be an inconvenient forum under La. R.S. 13:1819 **due to the length of time the children have resided outside the state and the nature and location of the evidence required to resolve the pending litigation, i.e., testimony pertaining to the children's education, health and social activities.**

> . . . .

> There are numerous cases in which Louisiana courts have lost jurisdiction in custody cases after the children went to live in other states which, over time, became the "home state" under the UCCJA's definition and the place where the most relevant evidence concerning the child was available. Examples include *Broadway v. Broadway,* 623 So.2d 185 (La.App. 2d Cir.1993), in which the child had lived in Mississippi for eight years; *Counts v. Bracken,* 494 So.2d 1275 (La.App. 2d Cir.1986), in which the child had been living in Arkansas for seven years; and *Martin v. Martin*, 545 So.2d 666 (La. App.5th Cir. 1989), in which the child had not lived in Louisiana for at least 16 months at the time the mother filed for permanent custody.

> In particular, we note that the case of *Tabuchi v. Lingo, supra,* is remarkably similar to the matter before us. *Although it was decided*

*under the UCCJA, the rationale in that case is the same.* There the mother moved to Missouri in 1984 with her son and daughter after she was awarded sole custody by a Louisiana court. (The judgment was modified by agreement in 1986 to award joint custody with the mother as primary custodian.) In 1990, the father sought to obtain custody of the son after the child came to Louisiana for summer vacation. The trial court denied the mother's exceptions of lack of jurisdiction and inconvenient forum and awarded primary custody of the boy to the father. This court reversed, finding that since the children had continuously lived with their mother in Missouri for six years, home state jurisdiction clearly vested in the Missouri court system long before the modification action was brought. Missouri was also the state with the most significant connection to the child and the maximum evidence concerning his present or future care, protection, training and personal relationships.

The father's additional argument that Louisiana should have permanent jurisdiction over all future child custody disputes because the November 2009 consent judgment contained a provision to that effect is without merit. Subject matter jurisdiction, such as that exercised in resolving child custody disputes, cannot be conferred by consent of the parties. La. C.C.P. art. 3; *Holdsworth v. Holdsworth,* 621 So.2d 71 (La.App. 2d Cir.1993).

*Wootton v. Wootton*, 49,001, pp. 10-12 (La.App. 2 Cir. 5/14/14), 138 So.3d 1253, 1258–60.

**DECREE**

For the reasons stated, we find it is in Kyler's best interest that Texas, as Kyler's home state and the state with which he has the most significant connections, is the more appropriate forum to exercise jurisdiction. We therefore reverse the trial court ruling. Because we find the trial court inappropriately exercised jurisdiction over the matter, we vacate the trial court's ruling on contempt. We remand this matter to the trial court with instructions to transfer this case to the appropriate court in Texas in accordance with the provisions of the UCCJEA. All costs of this appeal are assessed against Keary Ryan Hebert.

**REVERSED AND REMANDED WITH INSTRUCTIONS**.